UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HAROLD FAY,<br><br>             Petitioner,<br><br>             v.<br><br>STEVEN J. O'BRIEN,<br>Superintendent, Massachusetts Treatment Center,<br><br>             Respondent. | Civ. Action No. 15-cv-30048 |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                     **April 19, 2016**

### I. Introduction

Petitioner Harold Fay ("Fay") has filed a petition for a writ of habeas corpus ("Petition") pursuant to 28 U.S.C. § 2254 alleging that the Supreme Judicial Court's ("SJC") application of Mass. Gen. L. c. 123A violated his substantive due process rights under the Fourteenth Amendment. D. 2; D. 3. Respondent, the Superintendent of the Massachusetts Treatment Center, opposes the Petition, arguing that Fay is not entitled to relief under the requirements of 28 U.S.C. § 2254(d)(1). D. 11; D. 17. For the reasons set forth below, the Court DENIES Fay's Petition.

### II. Factual Summary

These facts are primarily drawn from the SJC's decision affirming Fay's civil commitment. Prior to his civil commitment, Fay was convicted of "sexual offenses" as defined under Mass. Gen. L. c. 123A, § 1. Commonwealth v. Fay, 467 Mass. 574, 575 (2014). These

offenses, all against children under the age of fourteen, occurred during four separate incidents between 1995 and 2010.  Id.

The first offense occurred in November 1995 when Fay showed a thirteen-year old boy a sexually explicit movie and backed the victim into a corner while begging him to expose his penis.  Id. at 576.  The boy "kept praying and praying" after the incident.  Id.  Fay was consequently convicted of one count of open and gross lewdness.  Id.

The second offense occurred in June 1999 when Fay entered the bedroom of his eleven and nine-year old granddaughters.  Id.  He knelt beside their bed and began to touch his penis.  Id.  Later that day, Fay sat next to his older granddaughter in his truck and engaged in sexually explicit conversation.  Id.  He then offered to show the victim his penis and asked her to look away as he masturbated to ejaculation.  Id. at 577.  The victim asked to leave, but Fay instructed her not to do so.  Id.  The victim later cried hysterically when she disclosed the incident to her mother.  Id.  Based on these incidents, Fay pled guilty to one count of open and gross lewdness and one count of indecent exposure.  Id.

The third offense occurred in September 1999 when Fay exposed his penis to three girls, aged ten to eleven, in a campground and then followed them along the trail.  Id.  The next day, Fay again exposed his penis to the girls while attempting to engage them in conversation.  Id.  The girls reported seeing Fay staring at them while touching his penis.  Id.  The girls were scared by the events and one stated that she was unable to eat for three days.  Id.  Fay pled guilty to three counts of open and gross lewdness.  Id.

The fourth offense occurred in October 2010 when Fay visited an acquaintance at her home.  Id. at 578.  Fay followed the acquaintance's eight-year old daughter and her cousin outside the home and stood in the doorway with his penis exposed.  Id.  The victim ran back to

the house in tears. Id. Later that night, Fay sat behind the victim and touched his penis as she used the computer. Id. Fay pled guilty to one count of open and gross lewdness in connection with the incidents. Id.

### III.     Procedural History

After Fay's release from prison in 2011, the Commonwealth sought Fay's civil commitment as a sexually dangerous person ("SDP") based upon his history of sexual offenses against children. D. 3 at 1. On October 15, 2012, after a jury-waived trial, Fay was found to be an SDP and was civilly committed for one day to life at the Massachusetts Treatment Center pursuant to Mass. Gen. L. c. 123A, § 14(d). Fay, 467 Mass. at 574-75. Fay appealed to the Massachusetts Appeals Court on October 18, 2012 and filed a petition for direct appellate review to the SJC on August 27, 2013. D. 3; D. 17. Fay argued that the trial judge's ruling was based on insufficient evidence and violated his substantive due process rights. D. 2.

After the hearing on appeal, the SJC affirmed the trial judge's order. The SJC concluded that the record "fully support[ed]" the trial judge's conclusion that Fay was sexually dangerous under Mass. Gen. L. c. 123A ("Chapter 123A") because the evidence showed that Fay was likely to continue to engage in noncontact sexual offenses against children and that such conduct would likely cause a child reasonably to apprehend contact sexual offenses. Id. at 582-83. The SJC noted that Fay's substantive due process claim was waived by Fay's failure to raise it before the trial court. Id. at n.9. Nevertheless, the SJC considered the merits of Fay's substantive due process claim to determine whether there was a substantial risk of a miscarriage of justice. Id. The SJC held that, given the circumstances, Fay's substantive due process rights were not violated. Because Fay was found likely to engage in noncontact sexual offenses that would cause children reasonably to apprehend a contact sexual offense, Fay was sufficiently

"dangerous" to meet the Supreme Court's requirements for civil commitment, as set forth in Kansas v. Hendricks, 521 U.S. 346 (1997) and Kansas v. Crane, 534 U.S. 407 (2002). Id. at 585-86. The SJC concluded that its interpretation of Chapter 123A protected children from conduct such as Fay's and "falls well within constitutional boundaries." Id. at 586.

## IV. Discussion

### A. Standard of Review

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court reviews Fay's application for a writ of habeas corpus to determine if the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).[1]  This standard is exacting because given the recognition of "the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, __ U.S. __, 134 S. Ct. 10, 15-16 (2013).

#### i. Contrary to clearly established federal law

A state court decision is contrary to clearly established federal law only if it "applies a rule that contradicts the governing law set forth in [the United States Supreme Court's] cases, or if it confronts a set of facts that is materially indistinguishable from a decision of [the] Court but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005). Clearly established federal law includes only "the holdings, as opposed to the dicta, of [the United States Supreme

---

[1] Under AEDPA, this Court also has the authority to review whether the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Fay did not raise this claim in his Petition, however, so this Court will confine its analysis to whether the state adjudication was contrary to, or an unreasonable application of, clearly established federal law.

4

Court's] decisions." White v. Woodall, __ U.S. __, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks omitted) (quoting Howes v. Fields, __ U.S. __, 132 S. Ct. 1181, 1187 (2012)).

### ii. Unreasonable application of clearly established federal law

A state court decision unreasonably applies clearly established federal law when its application of the Supreme Court's holdings is "'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." White, 134 S. Ct. at 1702 (quoting Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003)). To obtain federal habeas relief, "a state prisoner must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011).

### B. Substantive Due Process Claim

Fay asserts that his substantive due process rights were violated when he was classified as an SDP and civilly committed, despite the trial judge's finding that any future offenses would likely be limited to acts of exhibitionism and other noncontact offenses. D. 2 at 2, 17. Fay's Petition is based on two separate theories: (1) the SJC's use of a "reasonable child" standard for determining sexual dangerousness unconstitutionally expands the scope of Chapter 123A, D. 3 at 21-22,[2] and; (2) the SJC should have required a demonstration that Fay would engage in "violent or contact based crimes" to find him sufficiently dangerous to affirm his civil commitment, D. 3

---

[2] The Court notes that Fay did not raise this "reasonable child" argument during his appeal before the SJC. "[A]s a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act." Sanchez v. Roden, 753 F.3d 279, 294 (1st Cir. 2014) (quoting Clements v. Maloney, 485 F.3d 158, 162 (1st Cir. 2007)) (internal quotation marks omitted). The Court, however, will proceed to address this theory because Fay raised another version of his Fourteenth Amendment substantive due process argument before the SJC. Id. (noting that consistent "reliance on a specific provision of the Constitution" would satisfy the exhaustion requirement).

at 24-25.  Both theories purport to support Fay's claim that Chapter 123A violates substantive due process because it is not "narrowly tailored."  D. 3 at 18.

### i. The SJC's decision was not contrary to clearly established federal law

The "starting point" for a federal court's analysis under AEDPA is to identify the clearly established federal law that governs the petitioner's claims.  See Marshall v. Rodgers, __ U.S. __, 133 S. Ct. 1446, 1449 (2013).  If there is no clearly established federal law, "then per force the state court decision cannot be . . . contrary to . . . clearly established federal law."  Likely v. Ruane, 642 F.3d 99, 102 (1st Cir. 2011) (citing Wright v. Van Patten, 552 U.S. 120, 126 (2008)).

The Supreme Court has analyzed whether state civil commitment of an SDP violates substantive due process in Hendricks and Crane.  Hendricks held that the Kansas SDP statute did not violate substantive due process because the statute required courts to find a "lack of volitional control, coupled with a prediction of future dangerousness, [which] adequately distinguish[ed] [the defendant] from other dangerous persons who are perhaps more properly dealt with exclusively through criminal proceedings."  Hendricks, 521 U.S. at 360.  Crane, clarifying Hendricks, held that civilly committing an offender does not require a finding that the offender has a "total" lack of volitional control, but that, at the very least, the offender has some lack of control over their behavior.  Crane, 534 U.S. at 411-12.  As such, the Supreme Court has "consistently upheld such involuntary commitment statutes when (1) the confinement takes place pursuant to proper procedures and evidentiary standards, (2) there is a finding of dangerousness either to one's self or to others, and (3) proof of dangerousness is coupled . . . with the proof of some additional factor, such as a 'mental illness' or 'mental abnormality.'"  Id. at 409-10 (ellipses in original) (internal quotation marks and citation omitted).  Fay's substantive due process arguments appear to focus on the second prong.  D. 3 at 13-14, 19-20.

The Supreme Court's holdings in Hendricks and Crane, however, do not clearly address the constitutionality of the "reasonable child" standard affirmed by the SJC. Likewise, Hendricks and Crane do not establish whether, as the SJC decided, a defendant's likelihood of committing future noncontact offenses (as opposed to violent offenses) is sufficiently "dangerous" to justify civil commitment. As such, the SJC's decision is not contrary to clearly established federal law under either of Fay's theories. See Likely, 642 F.3d at 102.

### ii. The SJC's decision did not unreasonably apply clearly established federal law

Assuming strict scrutiny applies,[3] the SJC's decision did not involve an unreasonable application of Hendricks and Crane as the clearly established federal law governing civil commitment statutes. Fay argues that Chapter 123A, as interpreted by the SJC, is impermissibly broad because it allows for the civil commitment of defendants who are likely to carry out only noncontact offenses against children and such defendants are thus not part of the "limited subclass of dangerous persons," D. 3 at 13, who pose a "real continuing and serious danger to society," id. at 23.[4] That is, Fay essentially argues that a child's purportedly mistaken

---

[3] The Supreme Court has not established the appropriate level of scrutiny required in reviewing constitutional challenges to SDP civil commitment statutes. See United States v. Timms, 664 F.3d 436, 445 (4th Cir. 2012); Hubbart v. Knapp, 379 F.3d 773, 781 (9th Cir. 2004). This Court assumes, without deciding, that strict scrutiny applies considering the parties do not dispute its application, D. 3 at 15; D. 17 at 10, and "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection," Addington v. Texas, 441 U.S. 418, 425 (1979). Massachusetts must therefore have a "legitimate and compelling governmental interest" for civilly committing noncontact offenders, such as Fay, and the statute must be "narrowly tailored" to achieve that purpose. In re Dutil, 437 Mass. 9, 12 (2002).

[4] Fay supports this assertion in part with a citation to the "due process principles" used by the Supreme Court in United States v. Salerno, 481 U.S. 739 (1987). D. 3 at 23. According to Fay, like the Federal Bail Reform Act at issue in Salerno, Chapter 123A must be similarly limited to include only "individuals who have been arrested for a specific category of *extremely serious offenses*." Id. This argument is not persuasive. In Salerno, the Court upheld the Federal Bail Reform Act under the principle that an individual's liberty interest can sometimes be "subordinated to the greater needs of society." Salerno, 481 U.S. at 750-51. More importantly,

7

apprehension of a contact sexual offense, when experiencing a noncontact offense, does not render noncontact offenders sufficiently dangerous to justify their civil commitment.

Fay's argues that the SJC's inclusion of a "reasonable child" standard in its interpretation of Chapter 123A misapplies Hendricks and is not narrowly tailored.  D. 3 at 21-22.  The Supreme Court in Hendricks, however, did not rule on whether a state civil commitment statute could consider the reasonable apprehension of a child in determining "dangerousness."  Instead, the Court held Kansas's civil commitment statute constitutional because it "coupled proof of dangerousness with the proof of some additional factor" without specifying what constitutes "dangerousness."  See Hendricks, 521 U.S. at 358.

Fay also relies on J.D.B. v. North Carolina, __ U.S. __, 131 S. Ct. 2394 (2011) in which the Supreme Court expanded the protection of children during police interrogations by incorporating a "reasonable child" standard.  D. 3 at 20-22.  Fay asserts that the Court's recognition in J.D.B. that a child's perception is different than that of an adult supports his argument that the "reasonable child" standard unconstitutionally expands the scope of Chapter 123A.  Id. at 21-22.  This reliance is misplaced.  In J.D.B., the Court recognized that "children generally are less mature and responsible than adults; that they often lack the experience, perspective, and judgment to recognize and avoid choices that could be detrimental to them; that they are more vulnerable or susceptible to . . . outside pressures than adults."  J.D.B., 131 S. Ct. at 2403 (ellipses in original) (internal quotation marks and citations omitted).  As such, "children will often feel bound to submit to police questioning when an adult in the same circumstances would feel free to leave."  Id. at 2398-99.  To protect the rights of children, the Court held that a child's age properly informs Miranda's objective custody analysis.  Id. at 2402-03.  The Supreme

---

the Supreme Court's treatment of the federal pretrial detention statute in Salerno is not "clearly established law" in the civil commitment of SDP context.

Court's holding in a police interrogation context, however, is not "clearly established law" in the civil commitment context. When there is no controlling Supreme Court precedent, and to the extent J.D.B. is even applicable, Fay cannot argue that the SJC has unreasonably failed to extend a holding from a different context. "Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably *applies* this Court's precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error." White, 134 S. Ct. at 1706 (emphasis in original).

Fay also contends that the SJC's interpretation of Chapter 123A is not narrowly tailored because, under Hendricks, a prediction of future violence is a necessary prerequisite to a finding of "dangerousness" that justifies civil commitment. D. 3 at 16. The SJC disagreed, stating that:

> [a]n individual who is likely to engage in noncontact sexual offenses directed at children in a manner that would place them in reasonable apprehension of being the victim of a contact sexual offense plainly engages in conduct dangerous to their health, safety, and well-being.

Fay, 467 Mass. at 585-86. Fay's conduct instilled great anxiety in his victims, prompting them to "ke[ep] praying and praying," "cry[ ] hysterically" and be too scared to eat for three days. Id. at 576-77. The Supreme Court, however, has purposefully not set bright-line rules establishing the constitutional standard of "dangerousness" for this context-specific area of the law. See Crane, 534 U.S. at 413 (noting "the Constitution's safeguards of human liberty in the area of mental illness and the law are not always best enforced through precise bright-line rules" and "[s]tates retain considerable leeway in defining the mental abnormalities and personality disorders that make an individual eligible for commitment"). While the Kansas statute addressed in Hendricks included a requirement of sexual violence, that provision of the statute was relied upon by the Supreme Court to satisfy the requirement that there be a "finding of dangerousness." 521 U.S. at 357. Although the Supreme Court did not define "dangerousness" in Hendricks, the

9

Court has similarly imposed a "dangerousness" requirement in civil commitment cases dealing with the insane. In that context, the Supreme Court rejected the argument that a non-violent crime against property was insufficient to demonstrate the "dangerousness" required for civil commitment. See Jones v. United States, 463 U.S. 354, 365 (1983). The Court stated that it "never has held that 'violence,' however that term is defined, is a prerequisite for a constitutional commitment." Id. Thus, the SJC's holding that a noncontact offender against children can be sufficiently dangerous under Hendricks is not "so erroneous that there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." Nevada v. Jackson, __ U.S. __, 133 S. Ct. 1990, 1992 (2013) (quoting Harrington, 131 S. Ct. at 786) (internal quotation mark omitted). When the Supreme Court has given "no clear answer to the question presented . . . it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law." Wright, 552 U.S. at 126 (internal quotations omitted) (quoting Carey v. Musladin, 549 U.S. 70, 77 (2006)). As such, this Court cannot conclude that the SJC's determination that Fay's civil commitment under Chapter 123A[5] "falls well within constitutional boundaries," Fay, 467 Mass. at 586, was an unreasonable application of clearly established federal law.

The Court notes that, under these circumstances, the SJC's application of Chapter 123A does not violate Fay's substantive due process rights. Fay does not deny that the state has a compelling interest in protecting its citizens from sexual offenses, D. 3 at 22, and, relevant here, "[t]he prevention of sexual exploitation and abuse of children constitutes a government objective

---

[5] Other state and federal statutes also allow for the civil commitment of noncontact sexual offenders against children. See, e.g., Florida Stat. §§ 394.912 (2010) (including an indecent act "in the presence of a child" as a predicate offense); Arizona Rev. Stat. Ann. §§ 36-3701 (2007) (including "indecent exposure to a person who is under fifteen years of age" as a predicate offense).

10

of surpassing importance," New York v. Ferber, 458 U.S. 747, 757 (1982).  As discussed, the Supreme Court in Hendricks established that an SDP civil commitment statute is sufficiently narrow when it implicates only those who are "unable to control their dangerousness." Hendricks, 521 U.S. at 358; see In re Dutil, 437 Mass. at 14 (stating that the Hendricks test for narrowness is whether a statute is restricted to those with "a present mental condition that creates a likelihood of such [dangerous] conduct in the future") (internal quotation mark omitted). Under Hendricks, the SJC's application of the "reasonable child" standard in deeming Fay sufficiently dangerous as a noncontact offender appears narrowly tailored and justifies Fay's civil commitment.

The purpose of Chapter 123A is to protect the public, including children, from SDPs and taking into account the reasonable apprehension of a potential child victim is seemingly necessary to achieve that end.  Noncontact sexual offenses directed at children undoubtedly inflict severe harm. Id. at 476-77.  A child might reasonably experience fear, distress and an apprehension of a contact sexual offense when, for example, an adult follows them, id. at 577, confines them and exposes their genitals to them, id. at 576-78, or engages them in sexually explicit conversation while masturbating, id. at 576.  Thus, there is a compelling government interest in protecting children from noncontact sexual offenses and the dangerousness finding in Fay's case and the SJC's interpretation of Chapter 123A in affirming that finding was sufficiently narrow to protect children from the "dangerousness" or risk of harm caused by noncontact offenders.

## V. Conclusion

For the aforementioned reasons, Fay's petition for writ of habeas corpus, D. 2, is DENIED.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge